UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF NORTH CAROLINA

MAKIYA BRADSHER and )
SHANNON BRADSHER, )
)
Plaintiffs, )
) Case No. 1:23CV827
v. )
)
TONYA JANE COPE, *in her individual* )
*capacity*, and ALAMANCE- )
BURLINGTON BOARD OF )
EDUCATION, )
)
Defendants. )

## MEMORANDUM OPINION AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

This matter is before the Court on a Motion to Dismiss by Defendant Tonya Jane Cope

[Doc. # 17] and a Motion to Dismiss by Defendant Alamance-Burlington Board of Education

("School Board") [Doc. #10]. The instant matter involves an altercation between two students

that occurred at a local public high school. Plaintiffs Makiya Bradsher and her mother

Shannon Bradsher bring this action under 42 U.S.C. § 1983 against teacher Tonya Cope in her

individual capacity and against the School Board, alleging that Defendants violated Makiya's

due process rights to her liberty interest in personal security and bodily integrity and her

property interest in educational benefits. Plaintiffs also allege claims for negligence and gross

negligence, with a demand for punitive damages. For the reasons set forth below, the Court

recommends that both Defendant Cope's and Defendant School Board's respective motions

to dismiss be granted as to the § 1983 claims, and that the Court decline to exercise supplemental jurisdiction over any remaining state law claims.

I.    BACKGROUND

Plaintiffs allege that in October 2022, Makiya was a student at Cummings High School ("Cummings") in Burlington, North Carolina, which is a public school owned and operated by the School Board. (Compl. [Doc. #1] ¶ 13.) According to the Complaint, in August 2022, Mekya Haith-Herbin enrolled at Cummings as a student. (Compl. ¶ 16.) The Complaint alleges that Haith-Herbin had a criminal history that included violence and was on probation at the time she enrolled in Cummings and that Defendants knew of this history. (Compl. ¶ 16.) According to the Complaint, Haith-Herbin sought friendship with Makiya and repeatedly requested that the two become friends, a proposition that Makiya repeatedly declined. (Compl. ¶ 17.) Plaintiffs allege that Haith-Herbin was "obsessed" with Makiya and posed a threat to her, and that both of these things were known, or should have been known, to the administrators and staff at Cummings. (Compl. ¶ 18.)

Plaintiffs allege that on October 11, 2022, Makiya, Defendant Cope, and other students were in Defendant Cope's classroom at Cummings before first period. (Compl. ¶ 19.) According to the Complaint, Makiya was speaking to another classmate when Haith-Herbert entered the classroom and asked Makiya if there was "anything you want to say to me?" and "do you want to fight me?" (Compl. ¶ 20.) The Complaint alleges that Defendant Cope did not address Haith-Herbert's conduct. (Compl. ¶ 22.) Plaintiffs allege that Makiya attempted to ignore Haith-Herbert, but Haith-Herbert advanced toward Makiya, at which point Makiya "stood up to prepare to defend herself." (Compl. ¶ 23.) According to the Complaint,

2

Defendant Cope still did not intervene. (Compl. ¶ 23.) Plaintiffs allege that Haith-Herbert then approached Makiya, pulled out a knife, and began to physically beat and stab Makiya. (Compl. ¶ 24.) Plaintiffs allege that during the assault, Defendant Cope did not say anything or attempt to intervene or stop the fight in any way. (Compl. ¶ 27.) The Complaint alleges that Makiya was stabbed nine times in the head, face, and chest, suffered lacerations, and required medical attention including four staples in her head and three stitches in her face. (Compl. ¶¶ 29-30.)

II.    DISCUSSION

A. Standard of Review

When considering a motion to dismiss for failure to state a claim upon which relief may be granted under Federal Rule of Civil Procedure 12(b)(6), the Court must consider whether the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the plaintiff provides enough factual content to enable the court to reasonably infer that the defendant is liable for the misconduct alleged. Id. This standard "demands more than an unadorned, the-defendant-harmed-me accusation." Id. In other words, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id.

3

B.  Defendant Cope's Motion to Dismiss § 1983 Claim

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and the laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." West v. Atkins, 487 U.S. 42, 48 (1988). "The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law. Section 1983's color-of-law prerequisite is synonymous with the more familiar state-action requirement applicable to Fourteenth Amendment claims, and the analysis for each is identical. Both inquiries demand that the conduct allegedly causing the deprivation of a federal right be fairly attributable to the State." Davison v. Randall, 912 F.3d 666, 679 (4th Cir. 2019) (internal citations and quotations omitted). Here, Plaintiffs contend that there are sufficient allegations in the Complaint to state a claim that Defendant Cope violated Makiya's Due Process Right to personal security and bodily integrity, contending that "students have a right to be free from unreasonable threats to their personal safety." (Pls.' Resp. Br. [Doc. #22] at 7.)

In the Motion to Dismiss, Defendant Cope contends that the crux of the Complaint involves allegations of a failure to protect Makiya against private violence, which does not constitute a violation of the Due Process Clause. (Cope's Br. [Doc. #18] at 7-8.) In this regard, the Due Process Clause ordinarily does not require the state or its officials to protect individuals from harms caused by non-state actors. DeShaney v. Winnebago Cnty. Dep't of Soc. Servs., 489 U.S. 189, 201-02 (1989). However, there are two potential exceptions to this rule. Specifically, liability under § 1983 could be proper where either (1) the victim is in a

4

special relationship with the government entity, such as where the individual is in custody, or (2) affirmative acts of the government produce a "state-created danger."

Plaintiffs first argue that sufficient facts have been alleged to state a claim for liability under the state-created danger doctrine. "[T]o establish § 1983 liability based on a state-created danger theory, a plaintiff must show that the state actor created or increased the risk of private danger, and did so directly through affirmative acts, not merely through inaction or omission." Doe v. Rosa, 795 F.3d 429, 439 (4th Cir. 2015); see DeShaney, 489 U.S. at 201 ("While the State may have been aware of the dangers that [the child] faced . . . it played no part in their creation, nor did it do anything to render him any more vulnerable to them."); see also Pinder v. Johnson, 54 F.3d 1169, 1175-76 (4th Cir. 1995) ("As was true in DeShaney, the state did not 'create' the danger, it simply failed to provide adequate protection from it."); Willey v. Bd. of Educ., 557 F. Supp. 3d 645, 666 (D. Md. 2021) ("Standing by and doing nothing in the face of danger or failing to provide protection from danger does not implicate the state in the harm caused by third parties—a more active role is required."). The state-created danger exception to establish liability under § 1983 is narrow; "the bar for what constitutes an 'affirmative act' is high." Turner v. Thomas, 930 F.3d 640, 645 (4th Cir. 2019).

The Fourth Circuit considered the state-created danger theory in Stevenson ex rel. Stevenson v. Martin County Board of Education, 3 F. App'x 25 (2001), which is unpublished and not binding, but is persuasive. In Stevenson, a ten-year-old student was beaten and bullied by two classmates on a regular basis over a two-month period. Id. at 27. His parent reported the assaults and requested that he be separated from these classmates. The principal and counselor confirmed that they would be placed in separate classes, but this was not done. Id.

Soon thereafter, the student was punched in the head while in class, and when the student asked his teacher for help, she allegedly responded by stating "[t]here isn't anything I can do" and that the student "deserved it anyway." Id. at 28. The assault was not reported to the juvenile authorities by school staff, and the student's father eventually submitted a juvenile petition. Id. While this was ongoing, the beatings continued and the bullies harassed the student and his father at a public festival, after which the father pulled his child from the school and enrolled the student in a private school. Id. The student filed, *inter alia*, a § 1983 claim against the board of education and several school officials, alleging that the "defendants violated his liberty interest in bodily integrity." Id. at 30. In addressing these claims, the Fourth Circuit first noted that "[t]he law is clear that a State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause." Id. (internal quotation omitted). The Fourth Circuit then noted that one "exception to the general rule that a state is not liable for the acts of third parties occurs when the state itself creates the danger."

> In order to create a danger, the state has to take some affirmative steps. Liability does not arise when the state stands by and does nothing in the face of danger. See [DeShaney, 489 U.S.] at 203. Failing to provide protection from danger does not implicate the state in the harm caused by third parties. See Pinder, 54 F.3d at 1175.

> In Pinder this court was faced with a case in which it had to decide the contours of DeShaney's state-created danger exception. Pinder's ex-boyfriend, Pittman, broke into her home, assaulted her, and threatened to kill her and her three children. Pinder called the police, and when an officer arrived, she told him about the attack and the threats. The officer arrested Pittman and assured Pinder that she could safely leave her children at home alone while she went to work because Pittman would be in custody. However, because the police charged Pittman with misdemeanor offenses, he was released almost immediately. While Pinder was at work, Pittman set fire to her house, killing her three children who were asleep. Pinder sued the arresting officer, claiming

6

that he had created the danger. See id. at 1172. This court dismissed her suit because it was "purely an omission claim" where all that could be said was that the officer "'stood by and did nothing when suspicious circumstances dictated a more active role.'" Id. at 1175 (quoting DeShaney, 489 U.S. at 203). The state's conduct was not on that "point on the spectrum between action and inaction" such that it was implicated in the injury. Id.

The facts in DeShaney are equally disturbing. Randy DeShaney beat his four-year-old son Joshua so severely that Joshua suffered permanent brain damage. This tragic incident came after the Winnebago County Department of Social Services (DDS) in Wisconsin had been informed of child abuse. In fact, DDS had obtained a court order placing Joshua in the temporary custody of a hospital after DeShaney's beatings put Joshua there, but thereafter DDS released Joshua into his father's custody. Caseworkers had also made monthly visits to the DeShaney home, in which they observed suspicious injuries on Joshua's body. See DeShaney, 489 U.S. at 192-93. The Court nevertheless held that the state was not liable for a constitutional violation. The facts only amounted to a failure of the DDS to protect Joshua from private violence and the state had no constitutional duty to protect Joshua. See id. at 202-03.

Given the rejection of the plaintiffs' § 1983 claims in DeShaney and Pinder, we have to conclude in this case that the school officials did not create the danger that Alex faced at the hands of his classmates. . . .

Stevenson, 3 F. App'x at 31-32. The Fourth Circuit acknowledged that "[t]he school surely could have done more to protect Alex" but concluded that "the failure to protect by itself is not sufficient to trigger constitutional liability in this situation." Id. at 32.

In the instant matter, upon review of the Complaint in the light most favorable to Plaintiffs, the Complaint does not sufficiently allege facts that suggest that Defendant Cope took any affirmative act that rendered Makiya to be in a more vulnerable position, or created or increased the risk of danger, in order to sufficiently plead § 1983 liability under the theory of the state-created danger exception. Plaintiffs cite to L.R. v. School District, 836 F.3d 235, 244 (3d Cir. 2016), in which a kindergarten teacher released a student to an unknown adult (an action) which resulted in harm to the minor. Plaintiffs also cite to Doe #1 v. Montgomery

7

County Board of Education, No. 21-0356 PJM, 2021 WL 6072813, at *2, *11 (D. Md. Dec. 23, 2021), in which the plaintiff alleged a string of sexual assaults in the locker room that were reported multiple times, and the plaintiff further alleged that the principal "tried to cover up" the prior assaults and refused to provide any supervision in the locker room even after being specifically directed to provide supervision, which then facilitated the subsequent assault. The Court in Doe #1 reasoned that:

> One can debate philosophically whether actions such as those present here are mere failures to act as opposed to "affirmative" acts. But, in marked contrast to neutral failure-to-act cases, where a defendant does nothing at all after notice of an assault, the allegations in the present case, certainly as to [the principal], involve steps, purposefully taken, that arguably enhanced the dangerous situations that resulted in the injuries to the Minor-Plaintiffs.

Doe #1, 2021 WL 6072813, at *12. Plaintiffs also point to DJ ex rel. Hughes v. School Board, 488 F. Supp. 3d 307 (E.D. Va. 2020), in which a middle school student, by and through his parents, brought an action against various actors alleging that his Due Process rights were violated as a result of an incident where White football players allegedly battered and assaulted Black teammates in the locker room, videotaped the incident, and circulated the video on social media. The court allowed the case to proceed based on the alleged fact that the state actor in question "'*increased the risk* of private danger' by failing to have adult supervision in the locker room after assuring parents that supervision would occur following a similar incident in the locker room roughly one week before DJ suffered injury." DJ, 488 F. Supp. 3d at 327. The court focused on the complaint's allegations of: "similarity of the incidents, the temporal proximity of the incidents, the requirements to have students dress for practice together in the locker rooms, the affirmative assurances of [the coach] to have adult supervision over the minor children in the locker room, and the failure to implement supervision" in reaching its

8

determination to allow the claim to survive the motion to dismiss stage. Id. Finally, Plaintiff similarly cites to H.B. v. State Board of Education, No. 4:14-CV-204-BO, 2015 WL 2193778 (E.D.N.C. May 11, 2015). In that case, the victim was repeatedly assaulted by a classmate, and his parents discussed the assaults and received assurance they would be kept apart, but the victim was then assigned and required to share a room with that classmate in the school dormitory. The victim was repeatedly raped by the classmate in the dormitory, and even after reporting the rape was sent back to stay in the same room, with the classmate, unsupervised, for the rest of the week. The Court found that "the complaint sufficiently alleges that defendants in this instance created the danger." H.B., 2015 WL 2193778, at *2-4.

> The complaint alleges that defendants knew that S.D. had physically attacked C.B. in the past, knew that S.D. had been the victim of sexual abuse himself, and knew of C.B.'s parents' concerns regarding C.B.'s enrollment as a residential student and the increased opportunity for contact with S.D. The complaint alleges that despite this awareness and defendants' assurances that steps would be taken to protect C.B. from S.D., defendants knowingly assigned C.B. to S.D.'s dormitory room, where the two would be left together unsupervised for an extended period overnight.
>
> . . . .
>
> [P]laintiff here alleges that the State did more than fail to protect him; plaintiff alleges that the State, either intentionally or with reckless indifference, placed plaintiff in a situation in which it knew that danger could and most likely would arise. Where the State's behavior surpasses a passive failure to act, it may properly be considered to have "directly enabled" the dangerous situation which resulted in injury to the victim.

Id. at *4-5.

In contrast, however, in the present case there is no allegation that Defendant Cope took any such affirmative steps that facilitated the assault. Plaintiffs do not allege that Defendant Cope took any affirmative action that placed Makiya in a more vulnerable state.

9

Instead, Plaintiffs focus on Defendant's Cope *inaction* (inaction based on failing to restrict Haith-Herbin from entering the classroom, not stopping the fight, not seeking help). The allegations in the Complaint do not allege that Makiya was in a situation like the minor in L.R. where she was presumably safe from Haith-Herbin and Ms. Cope took an affirmative action to place her in harm's way. In fact, the Complaint alleges that Haith-Herbin was dangerous prior to her enrolling in Cummings and remained that way while enrolled. The Complaint does not plead any facts suggesting that Defendant Cope exacerbated or increased the danger that Haith-Herbin already presented to Makiya or engaged in behavior that surpassed a passive failure to act. There is no allegation that Defendant Cope covered up prior assaults, or made some false assurance that Makiya relied on to end up in a more vulnerable position, or assigned Makiya to stay alone in a room with Haith-Herbin without supervision, or otherwise took affirmative action that facilitated the assault.

In support of their argument that Defendant Cope created a danger, Plaintiffs point to the allegations that Defendant Cope knew Haith-Herbin had a history of violence prior to coming to Cummings (Compl. ¶ 16); knew Haith-Herbin intended to physically assault Makiya after Haith-Herbin entered the classroom (Compl. ¶¶ 20, 65); permitted Haith-Herbin into the classroom, creating an "effective safe haven for Haith-Herbin's misconduct" in the classroom where Makiya was located (Compl. ¶¶ 64, 65); and permitted Haith-Herbin to assault Makiya. (Pls.' Resp. [Doc. #22] at 9.) While in their brief, Plaintiffs attempt to articulate these allegations to be actions undertaken by Defendant Cope, in the Complaint itself, Plaintiffs allege that Defendant Cope allowed the assault "without interference." (Compl. ¶ 65.) To the extent that Plaintiff seeks to characterize Defendant Cope's lack of interference (inaction) as

10

"actions," the Court must "resist the temptation to accept plaintiffs' attempts to artfully recharacterize inaction as action." Burns-Fisher v. Romero-Lehrer, 57 F.4th 421, 426 (4th Cir. 2023) (quoting Graves v. Lioi, 930 F.3d 307, 327 (4th Cir. 2019)). Notably, the Complaint does not allege that Defendant Cope encouraged Haith-Herbin to enter the room, or told Haith-Herbin when and where to find Makiya alone, or assigned or required Makiya to be placed with Haith-Herbin, or engaged in any other affirmative action that created or increased the danger. Instead, the allegations reflect only that Defendant Cope stood by and did not intervene when Haith-Herbin entered the classroom and shouted "anything you want to say to me?" and "do you want to fight me" before approaching Makiya, who in response then stood up to engage in the fight. (Compl. ¶¶ 20-21.) Even if the allegations the Complaint set forth are proven, they would not support a claim that Cope either created or increased the risk of danger to Makiya. As such, the facts as alleged in the Complaint do not support a finding of § 1983 liability under the state-created danger doctrine.

As noted above, in addition to the state-created danger theory, § 1983 liability can be predicated on a special relationship, when the individual is incarcerated or institutionalized. As explained by the Fourth Circuit:

> The DeShaney Court did indicate that an affirmative duty to protect may arise when the state restrains persons from acting on their own behalf. [DeShaney, 489 U.S.] at 199-200; see also Revere v. Massachusetts General Hospital, 463 U.S. 239, 244, 103 S. Ct. 2979, 2983, 77 L. Ed. 2d 605 (1983); Youngberg v. Romeo, 457 U.S. 307, 317, 102 S. Ct. 2452, 2458-59, 73 L. Ed. 2d 28 (1982). The Court explained that "when the State by the affirmative exercise of its power so restrains an individual's liberty that it renders him unable to care for himself, and at the same time fails to provide for his basic human needs . . . it transgresses the substantive limits on state action set by the Eighth Amendment and the Due Process Clause." DeShaney, 489 U.S. at 200, 109 S. Ct. at 1005.

11

The specific source of an affirmative duty to protect, the Court emphasized, is the custodial nature of a "special relationship." DeShaney reasoned that "[t]he affirmative duty to protect arises not from the State's knowledge of the individual's predicament or from its expressions of intent to help him, but from the limitation which it has imposed on his freedom to act on his own behalf." Id. Some sort of confinement of the injured party—incarceration, institutionalization, or the like—is needed to trigger the affirmative duty. Id. This Court has consistently read DeShaney to require a custodial context before any affirmative duty can arise under the Due Process Clause. See, e.g., Rowland, 41 F.3d at 174-75 (noting that when the state has not restricted one's ability to care for oneself, the rationale for an affirmative duty falls away); Piechowicz v. United States, 885 F.2d 1207, 1215 (4th Cir. 1989) (holding that "substantive due process protects the liberty interests *only* of persons affirmatively restrained by the United States from acting on their own behalf") (emphasis added).

Pinder, 54 F.3d at 1174-75.

Though not alleged in the Complaint, in their response brief to Defendant Cope's Motion to Dismiss, Plaintiffs argue that the question as to whether a special relationship existed between Defendant Cope and Makiya should proceed to discovery because the Fourth Circuit has not clearly defined the student-teacher relationship and whether it constitutes a special relationship that would give rise to an affirmative duty to protect under § 1983. However, the Fourth Circuit has agreed with other circuits in finding that a student's relationship with a school—or teacher—generally does not create a special relationship that triggers protections of the Due Process Clause. See Stevenson, 3 F. App'x at 30-31 (collecting cases) (holding that because "[a]ttending school is not the equivalent of incarceration or institutionalization," no special relationship forms between a student and a public school that implicates the Due Process Clause). As explained by the Fourth Circuit in Stevenson:

Several circuits have been faced with the issue of whether a school-student relationship is a special relationship triggering the protections of the Due Process Clause. They have held uniformly that no special relationship exists because the student is not in physical custody and, along with parental help, is able to care for his basic human needs. See Doe v. Hillsboro Indep. Sch. Dist.,

12

113 F.3d 1412, 1415 (5th Cir.1997) (en banc); Doe v.. Claiborne County, 103 F.3d 495, 510 (6th Cir. 1996); Dorothy J. v. Little Rock Sch. Dist., 7 F.3d 729, 732 (8th Cir.1993); Maldonado v. Josey, 975 F.2d 727, 731 (10th Cir.1992); D.R. v. Middle Bucks Area Vocational Technical Sch., 972 F.2d 1364, 1372 (3d Cir.1992) (en banc); J.O. v. Alton Cmty. Unit Sch. Dist. 11, 909 F.2d 267, 272 (7th Cir.1990). This circuit has also recognized that "incarceration, institutionalization, or the like" is needed to "trigger the affirmative duty" under the Due Process Clause. Pinder v. Johnson, 54 F.3d 1169, 1175 (4th Cir.1995) (en banc).

Following the lead of our sister circuits, we hold that the Martin County School officials did not have a "special relationship" with Alex that triggered the protections of the Due Process Clause in this case. When a student attends public school, his liberty is not restrained to the extent contemplated in DeShaney. Attending school is not the equivalent of incarceration or institutionalization. See Youngberg v. Romeo, 457 U.S. 307, 102 S. Ct. 2452, 73 L. Ed. 2d 28 (1982) (Fourteenth Amendment imposes a duty upon the state to protect involuntary committed, mentally ill patients); Estelle v. Gamble, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976) (the state's deliberate indifference to prisoners' medical needs violates the Eighth Amendment). Although a student must remain in school during the day and the school functions much as a parent during that time, the state has not assumed total responsibility for the student's care. The student's parents retain the ability to provide for his basic human needs, and the child remains free to seek their help and protection. See Claiborne County, 103 F.3d at 509-10; D.R., 972 F.2d at 1371-73. Therefore, the state, simply by virtue of its maintenance of a public school system, does not become constitutionally liable for failing to prevent all student-on-student violence. Although the school officials here may have been irresponsible and ineffective in not heeding the warnings that Alex was helpless at the hands of bullies, they have not committed a constitutional violation.

Stevenson, 3 F. App'x at 30-31. As noted above, the decision is Stevenson is unpublished but is persuasive. Makiya was not in a custodial relationship with the school or Defendant Cope, and there is no basis here for a § 1983 claim based on a special relationship.

Finally, Plaintiffs also refer to Makiya's property interest in a public education and allege a Due Process violation because she was unable to attend school for several months after the assault. However, Defendant Cope notes that the ordinary context in which courts find that an individual has been deprived of a property interest in a public education is when a student

13

is expelled or punished, and the Complaint does not allege that Makiya was expelled or punished in any way. (Cope's Br. at 6-7.) As to this claim, the Fourth Circuit has held that "[w]hen school officials suspend or expel a student, it triggers the student's property interest in a public education." Stevenson, 3 F. App'x at 29. Here, as in Stevenson, Plaintiffs have not alleged that Makiya was suspended or expelled, and there are no allegations to support the contention that Defendants acted deliberately to force her out of school or singled her out to deprive her of a public education. Therefore, Plaintiff has not stated a § 1983 claim on this basis.

For all of these reasons, the Court concludes that Plaintiff has failed to state a claim under § 1983 against Defendant Cope.

C. School Board's Motion to Dismiss § 1983 Claim

Under § 1983, municipal liability is limited to action for which the municipality is "actually responsible." Pembaur v. City of Cincinnati, 475 U.S. 469, 479 (1986). Municipal liability under § 1983 applies to local government entities, when "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690 & n.55 (1978). A policy or custom for which municipal liability can arise under § 1983 may be established in four ways:

> (1) through an express policy, such as a written ordinance or regulation; (2) through the decisions of a person with final policymaking authority; (3) through an omission, such as a failure to properly train officers, that "manifests deliberate indifference to the rights of citizens"; or (4) through a practice that is so "persistent and widespread" as to constitute a "custom or usage with the force of law."

Case 1:23-cv-00827-TDS-JEP   Document 29   Filed 08/12/24   Page 14 of 19

Starbuck v. Williamsburg James City Cnty. Sch. Bd., 28 F.4th 529, 533 (4th Cir. 2022) (internal brackets omitted) (quoting Lytle v. Doyle, 326 F.3d 463, 471 (4th Cir. 2003)).

Here, the School Board argues that Plaintiffs fail to allege facts that would set forth a § 1983 claim because the Complaint does not allege sufficient facts to plausibly establish that a constitutional right has been violated. Defendant School Board further argues that even if the Court determined there was sufficient evidence to allege a constitutional violation, it should not be held liable because Plaintiffs have not alleged sufficient facts to establish municipal liability. Specifically, the School Board argues that: (1) the Complaint does not allege that there was a custom or policy attributable to the School Board; (2) the allegations in the Complaint focus on the conduct of a single employee rather than the conduct or decision of a person with final policy-making authority, and a governmental entity cannot be held liable under § 1983 on a theory of *respondeat superior*, (Def. School Board's Br. [Doc. #11] at 14); (3) that Plaintiffs fail to allege any facts, beyond conclusory statements, that the Board has a practice so widespread and persistent that it constitutes a custom or usage with the force of the law, (Def. School Board's Br. at 16); and (4) that Plaintiffs have not pled sufficient facts to state a claim for failure to train. Plaintiffs respond that the facts set forth in the Complaint allege that the School Board, as a final policymaker, upheld the decision and actions of Defendant Cope and that there was a failure to train, which both demonstrate a policy or custom that can give rise to § 1983 liability.

However, as discussed above, Plaintiff has failed to allege a constitutional violation by Defendant Cope. Plaintiffs' § 1983 claim seeks to impose liability on the School Board based on the actions of Defendant Cope, and Plaintiffs point to the allegation in the Complaint that

15

the Board encouraged, ratified and or approved Cope's actions. (Compl. ¶ 74.) While the Complaint alleges that the School Board "expressly or tacitly encouraged, ratified, and/or approved of the acts and/or omissions alleged herein and knew or should have known that such conduct was unjustified and would result in violations of constitutional rights" such an allegation is conclusory. Moreover, as discussed in detail above, Ms. Cope's actions did not constitute a violation of Makiya's constitutional rights, and therefore any approval of those actions would not establish a policy that gave rise to a constitutional violation. See Johnson v. Balt. Police Dep't, No. 22-2095, 2024 WL 1209744, at *6 (4th Cir. Mar. 21, 2024) ("A municipality can be liable under § 1983 only where its policies are the moving force behind the constitutional violation. [Plaintiff]'s Monell claim fails without a predicate constitutional violation to proceed." (internal quotations and brackets omitted)); Ryu v. Whitten, 684 F. App'x 308, 311 (4th Cir. 2017) (noting that there can be no municipal liability absent an underlying constitutional injury at the hands of an individual official (citing City of Los Angeles v. Heller, 475 U.S. 796, 799 (1986)).

In addition to ratification of Ms. Cope's conduct, Plaintiffs focus much of their argument on alleged failure to train. "In limited circumstances, a local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983." Connick v. Thompson, 563 U.S. 51, 61 (2011). Allegations of mere negligence are insufficient; "only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact" does municipal liability arise. City of Canton v. Harris, 489 U.S. 378, 388 (1989); see also Connick, 563 U.S. at 61; Jordan ex rel. Jordan v. Jackson, 15 F.3d 333, 341 (4th Cir.

16

1994). However, this failure to train claim is again based on alleged constitutional violations by Defendant Cope. Given that Plaintiffs have failed to allege a constitutional violation by Defendant Cope, Plaintiffs cannot state a § 1983 <u>Monell</u> claim against the School Board for failure to train Defendant Cope. <u>See, e.g.</u>, <u>Mitchell v. City of Charlotte</u>, No. 3:23-cv-00006-RJC-SCR, 2024 WL 1509675, at *9 (W.D.N.C. Mar. 1, 2024) ("Where a plaintiff alleges a municipal policy or custom by failure to train, the plaintiff must show that . . . the subordinates actually violated the plaintiff's constitutional or statutory rights . . . ." (internal quotation omitted)), <u>report and recommendation adopted</u>, No. 3:23-cv-00006-RJC-SCR, 2024 WL 1342612 (W.D.N.C. Mar. 29, 2024).

Plaintiffs also argue that the Complaint sets forth deficiencies in policy implemented by the School Board, as the final policy-maker. Specifically, Plaintiffs point to the facts alleged in the Complaint that the School Board:

 a. Failed to enact any policy that required or encouraged their administrators, staff or teachers to report concerning student conduct;

 b. Had no clear policy that requested or required the reporting of concerning student conduct by other students, including conduct that would reasonably lead the administration to recognize the student posed a threat of violence;

 c. Failed to enact a policy or protocol for assessing or supervising students with criminal or violent histories, or managing the threat posed by such students;

 d. Had no protocol for utilizing readily available information or conducting a threat assessment when violent individuals enrolled in school;

 e. Did not review internal incident reports or student records to identify potential indicators of the threat of future violence at school;

 f. Had no method for consulting with qualified internal or external security professionals or otherwise consider the need for additional security measures as to students who posed a high risk of school violence;

 g. Had no safety protocol in place for identified threats of violence, including violence with an edged weapon, that occurred within the school or inside a classroom;

 h. Failed to have a supervision mechanism for students it knew to be dangerous and violent;

     i.   Purported to prohibit students from bringing weapons onto campus, but did nothing to effectuate such prohibition;

     j.   Failed to establish clear and appropriate procedures for its teachers and staff regarding how to assess and address threats of violence at the school;

     k.   Had no protocol or procedures for alerting others to an immediate threat of violence, whether for purposes of protection, prevention or assistance;

     l.   Had no clear policies for student discipline, including the role of teachers in effectuating student discipline.

(Compl. ¶ 75.)

According to Plaintiffs, the Board's policies and inadequate training were the moving force behind "Defendant Cope's increasing the danger posed to Makiya." (Pls.' Resp. Br. [Doc. #24] at 16.) However, as discussed above, Plaintiffs have not alleged facts indicating that a state actor, Defendant Cope, intruded on a constitutional right. It is possible that Plaintiffs may be alleging a state law negligence claim based on these alleged failures, but that is a separate issue, and Plaintiffs have not linked the policies to a violation of a constitutional right to support a claim under § 1983.[1]

Reviewing the allegations in the Complaint in the light most favorable to Plaintiffs and construing all inferences in Plaintiffs' favor, Plaintiff has failed to state a § 1983 claim against the School Board, and the Court recommends that the § 1983 claim against the School Board be dismissed.

---

[1] Likewise, as previously discussed, the School Board itself does not have a special relationship with Makiya that would require it to protect her from third party harm for purposes of § 1983. The Court notes that to the extent Plaintiffs cite to state court cases to support the state claims for negligence, the determination of the availability of a § 1983 claim is distinct from the determination of state law claims, and the Court is not reaching the possibility of a state action for negligence against Defendant Cope or the School Board, since those claims are best addressed in state court if the federal claims are dismissed.

D. State Law Claims

Having concluded that Plaintiffs have failed to state a § 1983 claim against any Defendant, the Court may decline to exercise supplemental jurisdiction over the remaining state law claims. 28 U.S.C. § 1367(c)(3). The Court is recommending dismissal of all federal claims, and the remaining state law claims raise important issues of state law regarding the liability of school boards and teachers and claims of immunity. Therefore, the Court should decline to exercise supplemental jurisdiction over any remaining state law claims, including Plaintiffs' claims for negligence, gross negligence, and punitive damages. As such, Plaintiffs' state law claims should be dismissed without prejudice to Plaintiffs asserting those claims in state court.

III.    CONCLUSION

IT IS THEREFORE RECOMMENDED that Defendant Cope's Motion to Dismiss [Doc. #17] and Defendant School Board's Motion to Dismiss [Doc. #10] be GRANTED with respect to Plaintiff's § 1983 claims, that the federal claims be dismissed, that the Court decline to exercise supplemental jurisdiction over the remaining state law claims, that the state law claims be dismissed without prejudice, and that this case be dismissed.

This, the 12th day of August, 2024.

Joi Elizabeth Peake
United States Magistrate Judge